UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA *ex rel.*
SAMUEL L. ARMFIELD, III and
PATRICIA ARMFIELD, R.N.,

           Plaintiffs,

vs.                                    Case No. 8:07-cv-2374-T-27TBM

JAMES P. GILLS, M.D., ST. LUKE'S
CATARACT AND LASER INSTITUTE,
and ST. LUKE'S SURGICAL CENTER,

           Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Exclude Testimony and Expert Reports of Barbara Scott (Dkt. 382). For the reasons discussed below, the motion is due to be granted in part and denied in part.

### Introduction

Plaintiffs intend to offer the expert testimony of Barbara Scott ("**Scott**") in support of the claims asserted in Counts II[1] and III[2] of the Fourth Amended Complaint. Specifically, Plaintiffs contend that Scott is prepared to opine that Defendants "have submitted false claims to obtain financial remuneration for services that they were not otherwise entitled to, thereby creating losses to the Federal Government through the Medicare Program." Response in Opposition (Dkt. 392), p. 1. Plaintiffs further contend that "[t]his opinion is based upon a number of subsidiary opinions

---

[1] **Count II** – Plaintiffs Versus Defendants James P. Gills, M.D. and St. Luke's Cataract and Laser Institute – Fraudulent Billing for Lens Rotations Disguised as Lens Repositionings in Violation of 31 U.S.C. § 3729.

[2] **Count III** – Plaintiffs Versus Defendants James P. Gills, M.D. and St. Luke's Cataract and Laser Institute – Fraudulent Billing for Duplicative Evaluation and Management Services in Violation of 31 U.S.C. § 3729.

regarding Defendants' failure to comply with Medicare conditions for payment; the absence of complete and accurate medical record documentation; a lack of complete and accurate surgical record [sic]; billing for services that were either not rendered or not reimbursable; and billing separately for services which are covered by Medicare's global surgical package." *Id.* (citing Dkt. 382-1, p. 24). Defendants argue that Scott's testimony should be excluded because she (1) is not qualified to offer the proffered opinions and (2) provides no reliable bases or methodology for her opinions.

## **Background**

Scott has 34 years of healthcare experience, including clinical experience in the areas of medical-surgical, rehabilitation, and home health nursing as well as over ten years of practical experience in medical coding and retrospective claims analysis. *See, e.g.*, Declaration of Barbara Scott (Dkt. 263-3), ¶¶ 1, 13. Scott is a licensed registered nurse, an investigative consultant, a Certified Professional Coder, a Certified Fraud Examiner, and a former medical coding instructor. Prior to establishing her own consulting business, Scott worked for Blue Cross/Blue Shield where she served as a Senior Internal Auditor and Senior Nurse Investigator. Scott is also a National Advisory Board member for the American Academy of Professional Coders and a member of the Association of Certified Fraud Examiners.

While Defendants claim that Scott "has no prior education or experience – *none* – with either Medicare reimbursement rules and practices or ophthalmology," it appears that Scott has acquired at least some familiarity with the coding guidelines relating to ophthalmology in connection with her preparation for the Certified Professional Coder examination. *See* Declaration of Barbara Scott (Dkt. 263-3), p. 2. Scott also provided instruction relating to coding for ophthalmologic procedures

while teaching courses designed to prepare students to take the Certified Professional Coder examination. *See* Deposition of Barbara Scott, R.N. (Dkt. 263-4), pp. 107-08. Nevertheless, it cannot be disputed that Scott is not an expert in ophthalmology nor does she have any specialized expertise in the area of coding for ophthalmologic procedures.

## Standard

Before any expert testimony can be admitted as evidence at trial pursuant to Rule 702, Federal Rules of Civil Procedure, this Court must act as a gatekeeper and screen the proffered evidence to ensure that it is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Expert testimony is properly admitted when (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*;[3] and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1999). Additionally, this Court must consider the circumstances in this particular case in determining whether the proffered expert testimony is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999). The party seeking to admit the expert testimony bears the burden of laying the proper foundation for its admissibility by a

---

[3] Under *Daubert* and its progeny, the Court must make a preliminary assessment of "whether the reasoning or methodology underlying expert testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592. In making this assessment, courts may consider (1) whether a theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review and publication and (3) the general acceptance in the scientific community. *Id.* at 593-95.

preponderance of the evidence. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

## Discussion

Defendants argue that Scott offers neither pertinent personal experience nor any expert "methodology" as a foundation for her opinions. Rather, Defendants argue, that Scott's opinions are based on her recent review of articles and legal resources (obtained via the Internet or through Plaintiffs' counsel) and serve as "a mere conduit through which Relators seek to pass hearsay and various arguments to the fact finder ... under the mantle of 'expert opinion'." Plaintiffs argue that Scott's opinions are grounded on her review of medical records, medical claims, federal regulations, and the Current Procedural Terminology ("**CPT**") manual published by the American Medical Association.

Defendants' challenge to Scott's qualifications essentially focuses on her lack of experience with Medicare reimbursement rules/practices and ophthalmology, contending that Scott has no prior education or experience with Medicare regulations, ophthalmology, or surgery. *See* Motion to Exclude (Dkt. 382), p. 4. Notwithstanding that Scott has little, if any, experience in ophthalmology coding and billing and her expertise is in general coding practices and claims analysis, her broad experience with coding practices and claims analysis provides her with sufficient qualifications to testify as an expert in this case. Defendants' challenges to Scott's qualifications, her methodology, and the information she relied upon go to the weight of her opinions rather than their admissibility and are accordingly more appropriately raised during trial on cross-examination. *See Lydia*

4

*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193-94 (11th Cir. 2011); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).[4]

As an experienced professional coder, Scott will be permitted to testify regarding the CPT manual requirements and the justification for a particular code without reference to the medical necessity of a particular examination or procedure. *See United States v. Sharp,*, Criminal No. 2:07CR19, 2009 U.S. Dist. LEXIS 82470, at *19-20 (N.D. W.Va. Sept. 8, 2009). Based on her experience, she possesses the education and training to permit her to analyze the medical records and coding and billing practices in this case and to express sufficiently reliable opinions to assist the jury, based on reasoned principles.[5] Moreover, Scott's testimony will assist the trier of fact in understanding the evidence and determining the facts in issue. *See Frazier*, 387 F.3d at 1260 (quoting *Harcros Chems., Inc.*, 158 F.3d at 562); *see also State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, No. 6:06-cv-1757-Orl-GJK, 2009 WL 6357793, at *21 (M.D. Fla. Jan. 9, 2009) (denying motion *in limine* to exclude expert testimony relating to medical coding and billing practices); *U.S. v. Diaz*, No. 07-20398-CR, 2008 WL 906725, at *6 (S.D. Fla. Mar. 28, 2008) (permitting nurse practitioner to offer opinion testimony relating to false claims, including improper medical coding).

---

[4] To the extent Defendants contend that Scott is guilty of plagiarism or other misconduct, these issues are also more properly raised on cross-examination. *Cf. Rink v. Cheminova*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) ("[A] district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other instances of untruthfulness.").

[5] The Eleventh Circuit has recognized that a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as her testimony would likely assist a trier of fact. *See, e.g., Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (finding – in a civil RICO claim involving fraudulent real estate transactions – that a witness with a "a Ph.D. in economics, extensive experience as a professional economist, and substantial background in estimating damages" was qualified as an expert witness in assessing the loss suffered by plaintiff even though he had no real estate development experience); *see also Roundout Valley Central School Dist. v. The Coneco Corp.*, 321 F.Supp.2d 469, 475 (N.D.N.Y. 2004) ("Rather than relying on rigidity, demanding that an expert's qualifications match perfectly with the issues at hand, liberality and flexibility in evaluating qualifications should be the court's guide.") (citing *Henry v. Champlain Enter., Inc.*, 288 F.Supp.2d 202, 220 (N.D.N.Y. 2003)).

Notwithstanding, Scott (nor any other expert) will not be permitted to assert statements that amount to legal conclusions, or testify to whether Defendants committed Medicare fraud or fraud in general. *See S.E.C. v. Big Apple Consulting USA, Inc.*, No. 6:09-cv-1963, 2011 WL 3753581, at *4 (M.D. Fla. Aug. 25, 2011) (quoting *United States v. Long*, 300 Fed. App'x 804, 814 (11th Cir. 2008)); *see also Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).

Consistent with prior rulings, <u>Scott will not be permitted to offer medical opinions</u>, or opine on the medical necessity of any medical procedure, including for example, the propriety of and medical necessity of the toric lens realignment and second preoperative medical examination. Scott cannot, however, be expected to testify in a vacuum. She is entitled to rely on facts established through admissible evidence or shown to be of the type reasonably relied on by similar experts. Rule 703, Federal Rules of Evidence; *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, No. 6:06-cv–1757-Orl-GJK, 2009 WL 6357793, at *21 (M.D. Fla. Jan. 9, 2009) ("To the extent the reports contain inadmissible hearsay, such inadmissible hearsay [,while admissible to explain the basis of the expert's report,] will not be admitted for the truth of the matter asserted.") (internal quotations and citations omitted).

Relators are cautioned that because of her limited expertise, Scott's testimony will be narrow, consistent with this order. Shet will be permitted to testify regarding the CPT manual requirements and the justification for a particular code consistent with the terms of this Order.

**DONE AND ORDERED** this 30th day of January, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

6